621 So.2d 706 (1993)
FARM STORES, INC., et al., Appellants,
v.
Judy R. FLETCHER, Appellee.
No. 91-3844.
District Court of Appeal of Florida, First District.
May 7, 1993.
Rehearing Denied August 17, 1993.
*707 Timothy F. Stanton, Moore & Peterson, P.A., Orlando, for appellants.
Susan W. Fox, MacFarlane Ferguson, Tampa, and H. Guy Smith, Lakeland, for appellee.
PER CURIAM.
In this worker's compensation appeal, the employer, Farm Stores, Inc., and servicing agent, Gallagher Bassett Services, Inc., appeal the order of the judge of compensation claims finding claimant, Judy R. Fletcher, permanently totally disabled (PTD) and ordering payment of benefits therefor. On appeal, the employer/servicing agent (E/SA) argue that the JCC erred in failing to order an independent dental examination of the claimant, and in finding claimant PTD. We affirm the JCC's ruling as to the dental examination, but reverse as to the finding of PTD.
Claimant, Judy R. Fletcher, was injured on November 29, 1986, while working as a clerk for appellee Farm Stores, when she fell inside a walk-in refrigerator, rendering her unconscious for an undetermined period of time. After her initial treatment, claimant suffered continuing headaches, dizziness, pain and stiffness in her neck, and loss of balance and coordination. Claimant was examined by numerous physicians, among whom was Dr. Nelson P. Castellano, a dentist, who opined that claimant had a closed lock of the right temporomandibular joint (TMJ) secondary to her fall. Dr. Castellano recommended that claimant undergo magnetic resonance imaging (MRI) as a diagnostic aid. If the results of the MRI were to prove consistent with his clinical diagnosis, Dr. Castellano would recommend TMJ surgery. Claimant was also examined by a psychiatrist, Dr. McClane, who diagnosed chronic severe post-traumatic headaches secondary to her accident and opined that claimant was totally disabled at least since April 29, 1987. In an order dated April 5, 1989, the JCC found claimant temporarily and totally disabled, and awarded the appropriate benefits. The JCC also ordered the E/SA to provide claimant with "[m]edical care for the time and in the manner provided by law as the nature of her injury and the process of recovery requires by Dr. Thomas McClane and Dr. Nelson Castellano." The JCC's order of April 5, 1989, was affirmed on appeal. Farm Stores, Inc. v. Fletcher, 556 So.2d 791 (Fla. 1st DCA 1990).
Prior to this court's affirmance of the April 5, 1989, order, the E/SA filed, on February 6, 1989, a motion for an independent *708 dental examination. In a response dated February 7, 1989, claimant indicated that she would withdraw any objection to the independent dental examination if such could be promptly arranged, along with the deposition of the examining dentist. Thereafter, the E/SA did not immediately arrange for an independent dental examination. On September 26, 1990, the E/SA filed another motion for an independent dental examination, averring that Dr. Castellano had not seen claimant since immediately prior to the first hearing held in February, 1989, that the E/SA had not received any reports of diagnostic tests as were contemplated, and that based upon the independent neurological examination of Dr. Roberts, surgery may not be indicated for claimant. The E/SA moved the JCC to appoint Dr. Dolwyck to perform an independent dental examination. By order of October 22, 1990, the JCC granted the E/SA's motion for an independent dental examination.
Apparently, the E/SA later learned that Dr. Dolwyck was not available to perform the examination approved by the JCC. The E/SA then attempted to schedule the dental examination with Dr. Beatty. Claimant's attorney wrote to the E/SA on December 13, 1990, to inform them that claimant would not keep the appointment scheduled with Dr. Beatty. The E/SA then filed a motion on December 17, 1990, attempting to substitute Dr. Beatty for Dr. Dolwyck. The E/SA's motion for substitution of dentists was denied by the JCC's oral ruling. The E/SA filed a motion for rehearing of the JCC's oral denial. The JCC denied the motion for rehearing, stating that the E/SA were using their motion to thwart the April 5, 1989, order, which authorized medical care for the time and in the manner required by law as the nature of claimant's injury and the process of recovery require by Dr. Castellano. As the above events transpired, claimant filed a new claim for benefits, claiming that the E/SA had refused to provide treatment by Dr. Castellano as previously ordered, and requesting PTD benefits. The merits hearing on this claim was held on June 12, 1991.
The mere fact that the JCC awarded, in general terms, medical care for the time and manner required by law by Dr. Castellano did not foreclose the E/SA from the exercise of its statutory right to an independent dental examination. This much was recognized by the JCC who, after all, granted one such motion on October 22, 1990, more than a year after the order awarding care by Dr. Castellano. Such a general award merely begs the question of the reasonableness and necessity of proposed care and treatment. The E/SA's statutory right to an independent dental examination, however, is not without limitation. Section 440.13(2)(b), Florida Statutes (1991), seems to impose a "reasonableness" requirement subject to the scrutiny of the JCC. On the present facts, we decline to disturb the JCC's exercise of discretion in this area, noting that the E/SA need not have waited more than a year to attempt to schedule the independent dental examination. Nor are we persuaded by the fact that the E/SA may have been waiting to receive the results of an MRI performed by Dr. Castellano because there exists in the record competent, substantial evidence to support a conclusion that the MRI was not performed because the E/SA refused to pay for it. We find that the JCC did not abuse his discretion in denying the E/SA's motion for the substitution of Dr. Beatty for Dr. Dolwyck.
We turn now to the issue relating to the award of PTD benefits. In finding claimant PTD, the JCC relied on the testimony of Dr. McClane who opined that claimant reached maximum medical improvement (MMI) from a psychiatric standpoint as of May 14, 1990. From the psychiatric perspective, Dr. McClane opined that claimant's inability to work was based primarily on claimant's headache symptoms. McClane acknowledged that when claimant's jaw pain increases, her headaches usually increase, as they do with any kind of major stress. He noted, however, that claimant also has severe headaches without increase in TMJ symptoms  the headaches can occur independently. Dr. McClane opined that successful TMJ surgery would *709 not change the headache symptomatology enough to change his recommendations. Specifically, Dr. McClane diagnosed claimant as suffering from "chronic post-traumatic headaches, secondary to the accident and possibly made worse by other stressors that had occurred." The crucial portion of McClane's testimony as to claimant's diagnosis is as follows:
In this case [the headaches] best fit with somataform pain disorder, which is simply a descriptive term which means pain  preoccupation with pain for more than six months with either no organic physical findings to explain the pain or inadequate physical findings to explain the pain. And the diagnosis itself, the criteria for the diagnosis do not specifically address any specific etiology.
* * * * * *
I would add post concussion  or putting that down again today I would say somataform pain disorder and then put in parentheses post concussion headaches.
* * * * * *
In addition, for completeness, I would add on the basis of other findings  that I'm not really competent to assess as well myself  some kind of temporomandibular pathology but I would certainly defer to ... the oral surgeon for that sort of thing.
In contrast, Dr. Castellano found claimant's symptoms consistent with his diagnosis of closed lock of the TMJ. Castellano opined that 75% to 80% of patients with TMJ dysfunction have associated headaches. He also opined that, generally, TMJ surgery improves headache symptoms.
To paraphrase Dr. McClane's testimony, he expressed the opinion that claimant's psychiatric disability is characterized primarily by headaches of unknown origin. In fact, the doctor's psychiatric diagnosis is not contingent upon the etiology of the claimant's headaches. Although Dr. McClane conceded that he is not qualified to render an opinion as to the origin of claimant's headaches, the doctor felt qualified, nonetheless, to opine that claimant's headaches will not be alleviated by successful TMJ surgery. In our view, because Dr. McClane is admittedly not competent to render an opinion as to the source of claimant's headaches, he is likewise not competent to opine that claimant's headaches will not be relieved by successful TMJ surgery. Therefore, we find an absence of competent, substantial evidence to support the JCC's finding that claimant has attained MMI from the psychiatric perspective. See Norrell Corp. v. Carle, 509 So.2d 1377 (Fla. 1st DCA 1987) (orthopedic surgeon's opinion on causal relationship between psychiatric condition and industrial accident goes beyond his expertise and therefore is not competent, substantial evidence). The JCC erred in finding claimant PTD. We reverse the award of PTD benefits and remand the case to the JCC for entry of an order modified to comport with this opinion.
AFFIRMED in part, REVERSED in part and REMANDED.
ZEHMER, MINER and BARFIELD, JJ., concur.